A. KRISTINA LITTMAN (NJ Bar No. 04350-2005)
STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
  buchholzs@sec.gov
JOHN K. HAN (Cal. Bar No. 208086)
  hanjo@sec.gov
ALICE L. JENSEN (Cal. Bar No. 203327)
  jensena@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>BLOCK BITS CAPITAL, LLC, BLOCK BITS CAPITAL GP I, LLC and JAPHETH DILLMAN,<br><br>        Defendants. | Case No. 3:22-cv-2563<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY OF THE ACTION

1.      Defendants Block Bits Capital, LLC ("Block Bits Capital"), Block Bits Capital GP I, LLC ("Block Bits GP") (collectively "Block Bits"), and their founder and Managing Director, Defendant Japheth Dillman ("Dillman") engaged in the fraudulent and unregistered offer and sale of securities.  Dillman was the primary architect of the fraud, and with his co-

founder and co-Managing Director David Mata ("Mata"), Block Bits and Dillman promoted the offering and raised at least $960,000 for the Fund from approximately 22 retail investors, from at least July through December 2017.  The Commission has filed a separate action against Mata.

2.      Block Bits' offering materials falsely stated that it had developed an in-house proprietary auto-trading bot, which would trade a hundred different digital assets or "cryptocurrencies" over thirty different trading platforms based on parameters defined by Block Bits to maximize returns for the Block Bits Fund I, LP (the "Fund") in which investors purchased securities.  In reality, Block Bits never developed a functional auto-trading bot.  The only trading for the Fund was done manually by Mata through a digital asset trading platform account.

3.      Dillman also misrepresented to Block Bits investors that 40% of the Fund's assets were invested in "cold storage" (offline) deals that would generate substantial returns and be held in risk-free conditions.  In reality, at no time were any of the Fund's assets stored in offline wallets or other risk-free "cold storage" to generate returns.  Instead, Dillman and Mata used the investor funds to continue manually trading and for investments that carried significant risk, including in unsecured loans and an investment in a related company's initial coin offering of another digital asset, AML Bitcoin.  Plaintiff also has alleged AML Bitcoin was a fraudulent unregistered offering in *SEC v. NAC Foundation, LLC, et al.* (Dkt. 1; Case No. 3:20-cv-04188 (N.D. Cal., filed June 25, 2020)).

4.      In this action, the Commission seeks injunctions; disgorgement of ill-gotten gains, with prejudgment interest; civil monetary penalties; and other appropriate relief.  Unless Block Bits and Dillman are permanently restrained and enjoined, they will continue to engage in the acts, practices, and courses of business set forth in this complaint and in acts, practices, and courses of business of similar type and object.

**JURISDICTION AND VENUE**

5.      The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)],

1   Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act")

2   [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 209(d) of the Advisers Act of 1940

3   ("Advisers Act") [15 U.S.C. § 80b-9(d)].

4        6.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1)

5   and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], Sections 21(d), 21(e)

6   and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Sections 209(d), 209(e),

7   and 214 of the Advisers Act  [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

8        7.      Defendants, directly or indirectly, made use of the means and instrumentalities of

9   interstate commerce or of the mails in connection with the acts, transactions, practices, and

10   courses of business alleged in this complaint.

11        8.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act

12   [15 U.S.C. § 77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and Section 214

13   of the Advisers Act [15 U.S.C. § 80b-14].  Acts, transactions, practices, and courses of business

14   that form the basis for the violations alleged in this complaint occurred in this District.  During

15   the period described in this Complaint, Dillman met with and solicited prospective investors in

16   this District, and offers and sales of securities took place in this District.   Defendants Block Bits

17   Capital and Block Bits GP have maintained their principal places of business in San Francisco,

18   California, in this District.  Defendant Dillman also resides in this District.

19        9.      Under Civil Local Rule 3-2(d), this civil action should be assigned to the San

20   Francisco Division, because a substantial part of the events or omissions which give rise to the

21   claims alleged herein occurred in San Francisco County.

22                                    **DEFENDANTS**

23        10.      **Block Bits Capital, LLC ("Block Bits Capital")** is a California limited liability

24   company formed in 2017 with its principal place of business in San Francisco, California.

25   According to the Form D filed by the Fund with the Securities and Exchange Commission,

26   Block Bits Capital is the Investment Manager of the Fund.  Dillman and Mata are each 50%

27   owners and Managing Members of Block Bits Capital.

28

11.     **Block Bits Capital GP I, LLC ("Block Bits GP")** is a Delaware limited liability company formed in 2017 with its principal place of business in San Francisco, California. According to the Fund's Limited Partnership agreement, Block Bits GP is the General Partner of the Fund and manages the Fund's investments.  Dillman and Mata are each 50% owners and Managing Members of Block Bits GP.

12.     **Japheth Dillman**, age 44, of San Francisco, California, is the co-founder, co-owner, and Managing Member of Block Bits Capital and Block Bits GP.

**OTHER RELEVANT INDIVIDUAL**

13.     **David Mata**, age 42, of Spokane, Washington, is the co-founder, co-owner, and Managing Member of Block Bits Capital and Block Bits GP.

**FACTUAL ALLEGATIONS**

A.     **Block Bits' Purported "Automated Cryptocurrency Fund"**

14.     Dillman, who described himself in offering documents and on social media as an angel and crypto investor and advisor of blockchain and cryptocurrency startup companies since 2010, recruited Mata, a software programmer and video game developer, to be 50/50 partners in the Block Bits enterprise in 2017.  Dillman authored the offering documents for the Block Bits Fund, prepared marketing content describing the Fund on the Block Bits website, and began soliciting investors in the Fund on behalf of Block Bits in June 2017.

15.     Dillman described Block Bits as "An Automated Cryptocurrency Fund" on the Block Bits website and in offering materials, claims which Mata reviewed.  The materials stated that Block Bits' in-house proprietary auto-trader would trade a hundred different digital assets or cryptocurrencies over thirty different trading platforms based on parameters defined by Block Bits to maximize returns.  A slide deck that Dillman prepared and distributed to potential investors claimed that "we have seen an incredible increase in the performance of the auto-trader over letting the currency sit or be managed by hand."  Block Bits and Dillman raised approximately $960,000 from 22 investors in the Fund.  The investors purchased limited

partnership interests in the Fund, which were offered and sold as investment contracts, and therefore as securities, under the federal securities laws.

16.    Defendants' statements about the development of the auto-trader and purported returns on investment were important to investors because these features were touted as improvements over manual trading, which was a principal basis upon which investors were led to reasonably expect profits on their investments.

**B.    Block Bits, Dillman, and Mata Engaged in Deceptive Acts During the Offering and While Operating the Fund**

1.    Misrepresentations and Other Deceptive Acts Relating to the Operation and Performance of the Auto-Trader

17.    Dillman and Block Bits made materially false and misleading statements about the status of the purported auto-trading technology in offering materials, social media posts, and marketing efforts directed by Dillman.  In reality, Block Bits never completed development of the auto-trader and only funded early stage development efforts.  No functional auto-trader was ever tested or deployed and all of the trading of Fund assets was done by Mata manually. Dillman and Mata frequently discussed during the offering and while operating the Fund that the auto-trading bot was not yet functional and that Mata needed to continue doing manual trading in an effort to generate profits for the Fund.

18.    Dillman repeated and doubled-down on numerous material misrepresentations about the status of the auto-trading bot in emails to investors from June through September 2017. Although Dillman told investors that there were delays in the deployment of the auto-trading bot and that Mata had traded by hand in July 2017, Dillman misrepresented the current state and performance of the automated trading.  For instance, on July 9, 2017, Dillman touted to investors that "we're doing much more than merely investing in cryptocurrency ... we've built an autotrader that does arbitrage across the 30 different exchanges using multiple currencies.  Our returns have been pretty mind boggling to date."  On August 1, 2017, Dillman stated that "the arbitrage bot we have developed in house ... takes advantage of the price disparity on the

1   exchanges, buying low and selling high."  On September 25, 2017, he further stated that "[w]e

2   have created automation that capitalizes on the differentiation in pricing between exchanges and

3   between currencies.  This ensures we have some of the best gains in the market, numbers that

4   almost seem too good to be real.  We have finished the Arbitrage AutoTrader."

5       19.    Dillman went so far as to make up false "returns on investment" about purported

6   trading "tests" that Block Bits supposedly conducted using the auto-trader.  He sent prospective

7   investors emails describing the returns as "jaw dropping," "eye-popping" and "insane."

8       20.    In reality, Dillman fabricated the performance "results."  Block Bits hired

9   software and blockchain developers, but only funded early stage development.  No functional

10  auto-trader was ever tested or deployed.

11      21.    Dillman was aware at all times during the offering and while operating the Fund

12  that Block Bits' auto-trader was not functional and that Mata was manually trading the Fund's

13  investments in digital assets through a third-party digital asset trading platform account, and that

14  the offering and marketing materials claiming that Block Bits had already developed the auto-

15  trader were false and misleading.

16          2.    Misrepresentations and Other Deceptive Acts Relating to the Purported
                  "Cold Storage" Investments
17

18      22.    As part of Defendants' fraudulent scheme, Dillman also misrepresented to

19  investors in the Fund that 40% of the Fund's assets were invested in "cold storage" deals that

20  would generate substantial returns and be held in risk-free conditions.

21      23.    Dillman emailed investors on August 1, 2017, that Block Bits had struck a deal to

22  place 25 of the Fund's Bitcoins in "cold storage" for three months, at the end of which the Fund

23  would receive 50 Bitcoins, a 100% return.  On November 23, 2017, Dillman emphasized to

24  investors via email that keeping some of the Fund's digital assets offline in "cold storage" would

25  generate returns and keep its assets safe.

26      24.    However, at no time were any of the Fund's assets stored in offline wallets or

27  other risk-free "cold storage" to generate returns.  Instead, Dillman and Mata used the investor

28

funds to continue manually trading in digital assets and for investments with risks including: 1) an unsecured loan of digital assets worth about $65,500 to promote a startup company's initial coin offering ("ICO"); 2) a $50,000 loan to another startup company where Mata's friend worked; and 3) $101,000 for investments in the ICO of AML Bitcoin.

25.     Dillman and Mata prepared rudimentary contracts to conceal the true nature and risks of these digital asset investments.  They submitted the agreements as evidence of the purported "cold storage" investments to the Fund's accountants, who prepared the financial statements for distribution to investors.  Accordingly, all of these high-risk investments were misrepresented as "cold storage" assets with expected gains on the Fund's Schedule of Gains and Losses distributed monthly to investors, rather than high-risk unsecured loans or ICO investments.

26.     Defendants were aware the contracts did not reflect the actual risks associated with the Fund's investments, and provided the contracts to the accountants with knowledge that this would result in deceptive information being provided to the investors in the form of monthly financial statements reflecting that some Fund assets were invested in risk-free "cold storage" deals to generate returns.

**C.     Dillman and Block Bits GP Withdrew Excess Compensation From the Fund**

27.     According to the Limited Partnership agreement for the Fund, Block Bits GP was entitled to 50% of any profits made by the Fund on a monthly basis.  From September 2017 through December 2018, Dillman transferred approximately $300,000 of the Fund's assets to Block Bits GP, through which Dillman used the money to pay employee salaries, contractors, and other expenses, including $67,500 that Dillman transferred to his personal account.

28.     However, Mata's manual trading (calculated on a monthly basis during the period when Block Bits GP was making these withdrawals) generated a total of about $200,000 in returns.  Additionally, the "returns" from the loans falsely characterized as "cold storage" investments not only failed to materialize, but Defendants lost approximately $180,000 of the principal used for these investments, which left only $20,000 in profits for the Fund.  Based on

the Limited Partnership agreement, Block Bits GP was only entitled to 50% of any trading profits, or $10,000, and withdrew $290,000 in excess, unauthorized compensation.

**FIRST CLAIM FOR RELIEF**

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5*

*By All Defendants*

29.     The Commission re-alleges and incorporates by reference Paragraph Nos. 1 through 28.

30.     By engaging in the conduct described above, Defendants Block Bits Capital, Block Bits GP and Dillman, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter:

(a)     Employed devices, schemes, or artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c)     Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

31.     By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**

*Violations of Section 17(a) of the Securities Act*

*By All Defendants*

32.     The Commission re-alleges and incorporates by reference Paragraph Nos. 1 through 28.

33. By engaging in the conduct described above, Defendants Block Bits Capital, Block Bits GP and Dillman, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails,

(1) with scienter, employed devices, schemes, or artifices to defraud;

(2) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(3) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers.

34. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM FOR RELIEF**

*Violations of Sections 5(a) and (5)(c) of the Securities Act*

*By All Defendants*

35. The Commission re-alleges and incorporates by reference Paragraph Nos. 1 through 28.

36. By virtue of the foregoing, (a) without a registration statement in effect as to that security, Defendants, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce and of the mails to sell securities through the use of means of a prospectus, and (b) made use of the means and instruments of transportation or communication in interstate commerce and of the mails to offer to sell through the use of a prospectus, securities as to which no registration statement had been filed.

37. By reason of the foregoing, Defendants directly or indirectly violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

1

**FOURTH CLAIM FOR RELIEF**

2

*Violations of Sections 206(1) and 206(2) of the Advisers Act*

3

*By All Defendants*

4

38.     The Commission re-alleges and incorporates by reference Paragraph Nos. 1

5

through 28.

6

39.     At all relevant times, Defendants Block Bits Capital, Block Bits GP and Dillman

7

were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15

8

U.S.C. § 80b-2(a)(11)].  Defendants Block Bits Capital, Block Bits GP and Dillman each were in

9

the business of providing investment advice concerning securities for compensation.  Defendant

10

Dillman was also an investment adviser due to his ownership, management and control of

11

Defendants Block Bits Capital and Block Bits GP.

12

40.     As set forth above, Defendants, by use of the mails or any means or

13

instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly or

14

recklessly: (a) have employed or are employing devices, schemes, or artifices to defraud clients

15

and/or potential clients; or (b) have engaged or are engaging in transactions, practices, or courses

16

of business which operate as a fraud or deceit upon a client or prospective client.

17

41.     By reason of the foregoing, Defendants directly or indirectly violated, and unless

18

restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15

19

U.S.C. § 80b-6(1) and (2)].

20

**FIFTH CLAIM FOR RELIEF**

21

*Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8*

22

*By All Defendants*

23

42.     The Commission re-alleges and incorporates by reference Paragraph numbers 1

24

through 28.

25

43.     At all relevant times, Defendants Block Bits Capital, Block Bits GP and Dillman

26

acted as investment advisers to the Fund, a pooled investment vehicle as defined in Advisers Act

27

Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

28

44.     Defendants Block Bits Capital, Block Bits GP and Dillman, while acting as investment advisers to a pooled investment vehicle, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices, or courses of businesses which were fraudulent, deceptive or manipulative.  Defendants Block Bits Capital, Block Bits GP and Dillman engaged in acts, practices, or courses of businesses that were fraudulent, deceptive or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

45.     By reason of the foregoing, Defendants directly or indirectly violated, and unless restrained and enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Permanently enjoin Defendants Block Bits Capital, Block Bits GP and Dillman from directly or indirectly violating Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and Sections 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

**II.**

Permanently enjoin Defendants Block Bits Capital and Block Bits GP from directly or indirectly, including but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security.

**III.**

Permanently enjoin Defendant Dillman from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance,

1  purchase, offer, or sale of any security, provided however, that such injunction shall not prevent

2  him from purchasing or selling securities for his own personal account.

3  **IV.**

4      Issue an order requiring Defendants Block Bits Capital, Block Bits GP and Dillman to

5  disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this

6  complaint, together with prejudgment interest thereon.

7  **V.**

8      Issue an order requiring Defendants Block Bits Capital, Block Bits GP and Dillman to

9  pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)],

10  Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers

11  Act [15 U.S.C. § 80b-9(e)].

12  **VI.**

13      Retain jurisdiction of this action in accordance with the principles of equity and the

14  Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and

15  decrees that may be entered, or to entertain any suitable application or motion for additional

16  relief within the jurisdiction of this Court.

17  **VII.**

18      Grant such other and further relief as this Court may determine to be just and necessary.

19

20

21  Dated:  April 27, 2022              Respectfully submitted,

22

23                    _/s/ Alice L. Jensen_____

24                    ALICE L. JENSEN
                      Attorney for Plaintiff

25                    SECURITIES AND EXCHANGE COMMISSION

26

27

28